IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE UNITED STATES OF AMERICA,
ex rel., LOUANNE BOOTHE,

      **Plaintiffs,**

vs.                                                        No. CIV 03-1276 RB/DJS

SUN HEALTHCARE GROUP, INC.,

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Motion to Dismiss (Doc. 19), filed on November 18, 2005.[1] Jurisdiction arises under 28 U.S.C. §1331. Having reviewed the motion, record, arguments of counsel, relevant law, and being otherwise fully advised, I find that this matter should be dismissed for lack of subject matter jurisdiction.

**I. Background.**

This is a qui tam[2] action filed under the False Claims Act ("FCA"), 31 U.S.C. § 3729-3733. The purpose of the FCA "is to enhance the Government's ability to recover losses sustained as a result of fraud against the Government." *U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1041 (10th Cir. 2004) (quoting S.Rep. No. 99-345 at 1 (1986)). A private individual, known as a relator, "may bring a civil action for a violation of [31 U.S.C. § 3729] for the person and for the United States

---

[1] On February 7, 2006, the Court converted the motion to a motion for summary judgment.

[2] The Latin phrase "qui tam" is an abbreviation for "qui tam pro domino rege quam pro se ipso in hac parte sequitur," which means "who as well for the king as for himself sues in this matter." BLACK'S LAW DICTIONARY 1262 (7th ed. 1999).

Government . . . in the name of the Government." 31 U.S.C. § 3730(b)(1). The Government may elect to intervene and proceed with the action. 31 U.S.C. § 3730(b)(2). If the Government declines to intervene, the relator may continue the action. 31 U.S.C. § 3730(c)(3). Either way, if the action is successful, the relator is entitled to a percentage of the recovery or settlement, plus reasonable expenses, fees, and costs. *Grynberg v. Praxair, Inc.*, 389 F.3d at 1041.

Relator ("Boothe") filed the Complaint under seal on November 5, 2003. Three extensions of time were granted to allow the United States to determine whether to intervene. On May 5, 2005, the United States declined to intervene. *See* 31 U.S.C. § 3730(c)(3). On August 30, 2005, Boothe elected to proceed with the case. *See* 31 U.S.C. § 3730(b)(4)(B). On September 1, 2005, the Complaint was unsealed and served.

In the Complaint, Boothe alleged as follows:

1. In costs reports for the years 2000, 2001, and 2002, Defendant Sun Healthcare Group, Inc. ("Sun") took the exception afforded by §1010 of the Medicare Provider Reimbursement Manual for Sundance[3], when Sundance did not meet the requirements for the §1010 exception, and the improper claim resulted in a Medicare overcharge of $10.7 million.

2. Sun violated the Medicare rule that requires providers to be prudent buyers when it overcharged for therapy management services by $2.6 million.

3. In 2002, Sun overcharged Medicare for $240,000.00 for pharmacy charges at Northview Psychiatric Hospital in Boise, Idaho.

4. In 2001, Sun fraudulently billed Medicare and received payment for $200,000.00 worth of medical supplies that were stolen from the Denver Mediplex Specialty Hospital ("Denver

---

[3] The Complaint does not identify Sundance or its connection to Sun.

Facility").

5. In 2001 and 2002, at the Denver Facility, Sun posted $500,000.00 of temporary nursing staff wages to a Medicare reimbursable department for greater reimbursement than Sun would have received had it allocated the wages to the proper departments.

6. In 2000, 2001, and 2002, at the Denver Facility, Sun overcharged Medicare $540,000.00 when it funneled costs from an outpatient clinic owned by Sundance into the hospital costs reports for Medicare reimbursement.

7. In 2000, 2001, and 2002, Sun filed cost reports for Medicare reimbursement for mortgage interest payments that it did not pay due to its bankruptcy, resulting in cost report overstatements of $3.6 million.

8. In 2002, Sun instituted an early discharge policy at Ballard Rehabilitation Hospital in San Bernardino, California in order to increase Medicare revenue by $2 million.

9. In 2002, Sun extended hospital stays of patients at Continental Rehabilitation Hospital to meet the twenty-five day minimum required to obtain long-term care status in order to increase Medicare revenue by approximately $500,000.00.

10. In January 2003, Boothe realized that Sun charged Medicare for claims that should have been charged to third-parties. Boothe discovered that Medicare forms concerning the cause of injuries were completed by Sun personnel after patients had signed blank forms. Boothe contends that Sun's fraudulent conduct resulted in an estimated $9 million in over-billing to Medicare.

Sun moved to dismiss on the grounds that (1) the Court lacks subject matter jurisdiction because the claims are based on public disclosures; (2) Boothe does not have standing because she signed a release when she left her employment; (3) claims relating to conduct that occurred before

February 28, 2002 must be dismissed because they were discharged in bankruptcy; and (4) the claims are not alleged with particularity, as required by FED. R. CIV. P. 9(b). Boothe opposes the motion to dismiss. Because the issue of subject matter jurisdiction is dispositive, the remaining issues are not addressed. *See U.S. ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162 n.7 (10th Cir. 1999).

## II. Standard.

Sun styled its motion to dismiss as a motion brought pursuant to FED. R. CIV. P 12(b)(1). "[A] court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).

Whether a "public disclosure" has occurred is a jurisdictional inquiry arising out of the same statute that creates the cause of action, precipitating an investigation necessarily intertwined with the merits. *Grynberg v. Praxair*, 389 F.3d at 1049 n.13. Accordingly, on February 7, 2006, the Court converted this motion to a motion for summary judgment and allowed the parties thirty days to submit supplemental materials. On March 9, 2006, the parties notified the Court that they declined to submit supplemental materials.

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

4

any material fact.'" *Munoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)).  When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party.  *Id.*

**III.  Discussion.**

**A.  Whether the claims are based on public disclosures.**

The FCA has two basic goals: 1) to encourage private citizens with first-hand knowledge to expose fraud; and 2) to avoid civil actions by opportunists attempting to capitalize on public information without seriously contributing to the disclosure of the fraud.  *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552 (10th Cir. 1992).  Consistent with these goals, the FCA provides that no court shall have jurisdiction over a qui tam action based upon the public disclosure of allegations or transactions unless the qui tam plaintiff is an original source of the publicly disclosed information.  *See* 31 U.S.C. § 3730(e)(4).

This section provides:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4)(A) & (B).

5

"Satisfaction of the provisions of 31 U.S.C. § 3730(e)(4) is a question of subject matter jurisdiction." *United States ex rel. Fine v. Advanced Sciences, Inc.*, 99 F.3d 1000, 1003 (10th Cir. 1996). As the party invoking federal jurisdiction, Boothe must allege in the complaint the facts essential to show jurisdiction and must support those allegations by competent proof. *United States ex rel. Holmes v. Consumer Ins. Group*, 318 F.3d 1199, 1202 (10th Cir. 2003) (en banc). As with all statutes that confer jurisdiction on federal courts, the FCA must be "strictly construed, and doubts resolved against federal jurisdiction." *Precision Co.*, 971 F.2d at 552 (citing *F & S Construction Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964)).

The jurisdictional inquiry under 31 U.S.C. § 3730(e)(4)(A) & (B) entails a four-step analysis: (1) whether the alleged public disclosure contains allegations or transactions from one of the sources listed in § 3730(e)(4)(A); (2) whether the alleged disclosure has been made public within the meaning of the FCA; (3) whether the relator's complaint is based upon this public disclosure; and, if so, (4) whether the relator qualifies as an original source. *Grynberg v. Praxair*, 389 F.3d at 1048. "A court should address the first three public disclosure issues first. Consideration of the fourth, 'original source' issue is necessary only if the court answers the first three questions in the affirmative." *Id.* (quoting *Kennard v. Comstock Res., Inc.*, 363 F.3d 1039, 1041 (10th Cir. 2004)).

Sun argues that several of Boothe's claims are based upon facts alleged in prior FCA qui tam lawsuits brought against Sun. Allegations disclosed via civil litigation fall within the scope of public disclosure, as contemplated by § 3730(e)(4)(A). *Precision Co.*, 971 F.2d at 554 n.5. Indeed, Boothe does not dispute that the prior qui tam suits qualify as listed sources within the public domain. Boothe argues that her complaint is not based upon the same allegations or transactions as the prior suits because her allegations cover a later time period and concern different facilities.

6

The Tenth Circuit applies a "restrictive interpretation of the threshold 'based upon' test [finding such interpretation] consistent with the dual purpose of the [FCA]." *Gynberg v. Praxair*, 389 F.3d at 1051 (quoting *Precision Co.*, 971 F.2d at 552).  In *Precision Co.*, the Tenth Circuit determined that the phrase, "based upon," is properly understood to mean "supported by." *Precision Co.*, 971 F.2d at 552.  Thus, a qui tam action, even partly based upon publicly disclosed allegations or transactions, is nonetheless "based upon" such allegations or transactions. *Id*.  The test is whether "substantial identity" exists between the publicly disclosed allegations or transactions and the instant complaint. *Gynberg v. Praxair*, 389 F.3d at 1051 (quoting *Precision Co.*, 971 F.2d at 553-54).

Boothe relies on *U.S. ex rel. Fine v. Sandia Corp.*, 70 F3d 568, 571 (10th Cir. 1995) in support of her argument that her Complaint is not based on public disclosures because it covered a different time period and different facilities.  A fair reading of *Fine* undercuts Boothe's stance.

In *Fine*, the relator asserted that nuclear waste funds were misappropriated at Sandia National Laboratory ("Sandia") in violation of the Nuclear Waste Policy Act. *Fine*, 70 F.3d at 569.  The relator was employed as an auditor by the Department of Energy ("DOE") and his duties included auditing Sandia. *Fine*, 70 F.3d at 570.  Following his retirement in July 1991, the relator continued to investigate activities at Sandia. *Id*.  In April 1992, the relator filed a qui tam suit under the FCA alleging that Sandia improperly assessed a 2.5% "tax" against nuclear waste funds during fiscal years 1991 and 1992 and used the diverted funds in discretionary research and development. *Id*.  The relator claimed that his post-retirement investigation, including his receipt of an anonymous phone call and his independent confirmation of it, formed the basis of his complaint. *Id*.

The Honorable James A. Parker, United States District Judge, dismissed the action for lack of subject matter jurisdiction because the action was based in part upon publically disclosed

7

allegations and transactions and the relator was not the original source of the information. *Fine*, 70 F.3d at 569. The public disclosures in *Fine* consisted of a General Accounting Office ("GAO") report and congressional hearing testimony. *Id*.

In December 1990, the GAO issued a report covering three national laboratories, including Sandia. *Id*. The GAO report found that nuclear waste funds were improperly "taxed" at the two other national laboratories covered by the report and that DOE had been aware of the practice since at least 1989. *Fine*, 70 F.3d at 571. The March 1991 congressional hearing shed further light on the diversions of funds, without identifying the specific laboratories involved. *Fine*, 70 F.3d at 570.

On appeal, the relator argued the public disclosures did not contain the allegations or transactions upon which his complaint was based because they did not cover the same facility and time period as his complaint. *Fine*, 70 F.3d at 571. The Tenth Circuit rejected this argument and affirmed the determination that prior public disclosure of the alleged fraud in the GAO report and congressional hearing precluded the relator's qui tam suit. *Fine*, 70 F.3d at 572. *Id*.

The Tenth Circuit observed that, where the public disclosure "set the government squarely on the trail of the alleged fraud" without the assistance of the relator, it would be contrary to the purpose of the FCA to exercise jurisdiction. *Fine v. Sandia Corp.*, 70 F.3d at 571. Because the disclosures detailed the mechanics of the practice at two other laboratories and indicated the DOE's acquiescence, the Tenth Circuit concluded that the public disclosures sufficiently alerted the government to the likelihood that Sandia would "tax" nuclear waste funds in the future. *Id*.

Applications of these precepts to this case leads to a similar conclusion. Allegations that Sun over billed for Medicare were publicly disclosed in the prior FCA suits. The relators in the prior FCA actions claimed that Sun improperly used the "related party" exception in obtaining Medicare

reimbursement for therapy management services, that Sun violated the prudent buyer rule for therapy management services, and that Sun allocated wages to Medicare reimbursable departments that should have been allocated to other departments.

Similar to the public disclosures in *Fine*, the public disclosures identified Sun as the perpetrator and disclosed the material elements of the fraudulent transactions. *Fine v. Sandia Corp.*, 70 F.3d at 571. Boothe's attempt to distinguish *Fine* on the temporal factor is unsupported. In *Fine*, the relator argued that the 1990 report and the 1991 congressional hearing did not qualify as public disclosures because they covered the years 1988-1990 and his complaint identified the practice in 1991 and 1992. *Id*. The Tenth Circuit disagreed, and held that the report and the congressional hearing "sufficiently alerted the government to the likelihood that Sandia would also 'tax' nuclear waste funds in the future." *Fine*, 70 F.3d at 571.

As in *Fine*, the prior FCA suits covering the years up to 1999 alerted the government to the likelihood that Sun would fraudulently bill Medicare in 2000, 2001, and 2002. Construed in the light most favorable to Boothe, the record establishes that the Complaint is based upon, at least in part, information contained in the prior FCA suits. Thus, the prior qui tam suits constitute public disclosures for purposes of 31 U.S.C. § 3730(e)(4)(A).

Boothe may proceed only if she is an original source under 31 U.S.C. § 3730(e)(4)(B). In order to qualify as an original source, the relator must have "direct and independent knowledge of the information on which the allegations are based" and must have "voluntarily provided the information to the Government" prior to filing suit. 31 U.S.C. § 3730(e)(4)(B); *Grynberg v. Praxair*, 389 F.3d at 1052. Boothe concedes that she is not the original source for the public disclosures in the prior FCA suits. Because the complaint is based upon public disclosures for which Boothe was

9

not an original source, this action is barred by 31 U.S.C. § 3730(e)(4).

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 19), filed on November 18, 2005, and converted to a motion for summary judgment on February 7, 2006, is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**